**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JASON DODD,<br>Defendant. | No. CR12-3004-MWB<br>**ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS** |

---

**TABLE OF CONTENTS**


***I. INTRODUCTION AND BACKGROUND*** . . . . . . . . . . . . . . . . . . . . . . . . . . 2
- ***A. Procedural Background*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
- ***B. Factual Background*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

***II. LEGAL ANALYSIS*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
- ***A. Standard Of Review*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
- ***B. Objections To Findings Of Fact*** . . . . . . . . . . . . . . . . . . . . . . . . 12
  - ***1. Witness's credibility*** . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  - ***2. Whether counsel's argument was frivolous*** . . . . . . . . . . . . 12
- ***C. Objections To Legal Conclusions*** . . . . . . . . . . . . . . . . . . . . . . . 13

***III. CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## *I. INTRODUCTION AND BACKGROUND*

### *A. Procedural Background*

On February 22, 2012, an Indictment was returned against defendant Jason Dodd charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On April 17, 2012, defendant Dodd filed a motion to suppress in which he seeks to suppress evidence seized during a search of his pickup truck conducted pursuant to a search warrant. Defendant Dodd argues that the affidavit submitted in support of the search warrant application for his pickup truck was insufficient to establish probable cause to support the issuance of the warrant. Thus, he argues the evidence was found in violation of the Fourth Amendment of the United States Constitution. The prosecution filed a timely resistance to defendant Dodd's motion.

Defendant Dodd's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). On May 10, 2012, Judge Zoss conducted a hearing on Dodd's motion. On May 15, 2012, Judge Zoss filed a Report and Recommendation in which he recommends that defendant Dodd's motion to suppress be denied. In his Report and Recommendation, Judge Zoss concluded the facts contained in the search warrant application were more than sufficient for the magistrate to conclude that a firearm likely would be found in Dodd's pickup truck. Alternatively, Judge Zoss found that, even if probable cause did not support the search warrant, suppression of the evidence seized pursuant to that warrant is not appropriate because the *Leon* good-faith exception applies. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984). Therefore, Judge Zoss recommended that defendant Dodd's motion to suppress be denied.

On May 21, 2012, defendant Dodd filed objections to Judge Zoss's Report and Recommendation. The prosecution has not filed a response to defendant Dodd's

objections. I, therefore, undertake the necessary review of Judge Zoss's recommended disposition of defendant Dodd's motion to suppress.

### *B. Factual Background*

In his Report and Recommendation, Judge Zoss noted the following facts drawn from defendant Dodd's Brief:

> "From around May 2010 through early 2011, the Defendant Jason Dodd and his wife April Dodd rented a residence on real property commonly known as 685 310th Street in Woden, Iowa in Hancock County. A home and trailer are present at said address. When Dodd originally moved onto the property, he lived in the trailer with April while the home was occupied by Charles and Kelly Kraft.
>
> Around June 2010, the Krafts and the other occupants of the home were not making their rental payments to the landlord, Lornie Anderson, but Dodd was able to negotiate a deal where the Krafts could stay at the property. This was due, in part, to the fact that Kelly Kraft was pregnant at the time. The Dodds moved into the two bedroom home where they resided with the Krafts.
>
> The living arrangement never worked well as the Krafts never paid their share of the obligation to the landlord. The two had a falling out around September of 2010 and the Dodds told the Krafts they needed to leave. The Krafts finally left in November 2010.
>
> The Hancock County Sheriff's office received a call from Charles Kraft on December 1, 2010 concerning the Defendant Jason Dodd allegedly having a .357 magnum on the farm. Kraft continued on saying that Dodd also keeps this gun loaded in a night stand by his bed. Due to the disagreement between Kraft and Dodd, the Hancock County Sheriff's office did not feel the information was creditable enough to pursue charges at that time.

The Hancock County Sheriff's office spoke with Heidi Lusson on February 10, 2011. Lusson is Charles Kraft's mother. Lusson reported that Kraft had made comments about Dodd having a firearm. Lusson reported that April Dodd had left a message on her phone claiming that Kraft had stolen some jewelry and the .357.

Lusson advised that she had been out to the property on February 6, 2011 to move Kraft's remaining property out. She advised Ron Lusson (husband), Phil Lusson (step-son), Kim Lusson (step-daughter) and Chris Thompson were all present on the farm at this time to help with the move. Heidi Lusson had set this time up with April but April called and said she could not make it. April allegedly gave Lusson the keys and advised her it was fine that she was on the property.

Lusson advised that the camper trailer was unlocked when they arrived. The door was open and a weapon was noticed just sitting inside the door on top of some boxes. Lusson advised that a couple of the parties present on February 6, 2011 started passing the gun around and looking at it. Heidi said she made sure the trailer was locked when they left. Heidi advised she did not think any of them would have taken the weapon.

On February 12, 2011 at 1324 hours, April Dodd (legal name Hunt) filed a report with the Hancock County Sheriff's office that she had a Smith and Wesson .357 magnum stolen. April is the common law wife of Jason Emery Dodd.

Heidi Lusson phoned the Hancock County Sheriff's office on February 17, 2011. She advised that she had been checking around with everyone that was at the farm. She alleged that she spoke with Chris Thompson on the night of February 16, 2011 and he told her that he put the firearm in the pickup parked on the property. Thompson allegedly told her he did this because the trailer was already locked. Thompson claimed he put it behind the seat in the truck that was parked next to the house. Law enforcement attempted Thompson by phone with no results.

Lusson also informed law enforcement that Steve Rogers had allegedly seen Dodd fire a gun at the property. Rogers allegedly was

working for Rent-A-Center at the time and was delivering something to the residence. Rogers apparently told Lusson that Dodd and Kraft were shooting at an old TV.

Law enforcement obtained Rogers' phone number from Lusson. Law enforcement made contact with Rogers by phone. He was not sure on the specific date but advised that it was sometime last summer. He could not recall what type of gun was being shot. He was able to place the firearm in Dodd's possession and knew Dodd from previously being a customer of Rent-A-Center. Law Enforcement contacted Rent-A-Center and was able to obtain a copy of the delivery receipt for the first part of June 2010. The actual delivery date was unknown as different dates were shown on the same sheet.

Law Enforcement spoke with Casey Hallman on February 15, 2011. Hallman is an acquaintance of Jason Dodd. Hallman allegedly told law enforcement he had seen Dodd wearing a gun on his hip while at the farm. Hallman allegedly advised law enforcement that he saw Dodd wearing a gun on three or four different occasions. Hallman allegedly described it as a chrome or nickel-plated .357. Hallman and Dodd have a history with Hallman being accused of stealing a motor from the property in question and Hallman's presence being prohibited by both Dodd and his landlord."

Report and Recommendation at 1-4.

Judge Zoss also found that the search warrant application stated as follows:

> "[T]he facts and circumstances which lead me to believe that probable cause for this search exists are as follows:
>
> a. My personal knowledge: April Hunt (Dodd) reported having this firearm stolen from a camper that was parked at her residence located at 685 310th St. Woden, IA. It is unknown if she provided the correct model or serial number. Jason Dodd is a convicted felon. Numerous individuals have placed this firearm in Jason Dodd's possession. As a felon, Jason Dodd is

> prohibited from possessing firearms and ammunition.
>
> (1) Facts: Heidi Lusson and Chris Thompson were at this residence on February 6, 2011 to help a friend move. This firearm was seen by both these subjects at this time. On February 16, 2011 Lusson had a conversation with Chris Thompson. Thompson told her that he had moved the firearm and placed it behind the seat in the pickup that was parked next to the house. This truck is registered to Jason Emery Dodd.
>
> (2) Source of Facts: Heidi Lusson"

Report and Recommendation at 4 (quoting search warrant application at 1-2).

Judge Zoss made these additional findings of fact:

> The issuing magistrate found that the affiant "has talked to people that have seen a .357 handgun in the possession of Mr. Dodd, the handgun being in Mr. Dodd's possession." *Id.* at 4. The magistrate further found that the information provided by the informant appeared to be credible because the informant "was not under investigation or facing charges," providing probable cause to issue the search warrant. *Id.*
>
> Law enforcement subsequently conducted a search on the vehicle and discovered a Smith and Wesson .357 magnum.

Report and Recommendation at 4-5 (quoting search warrant application at 4). Upon review of the record, I adopt all of Judge Zoss's factual findings that have not been objected to by defendant Dodd.

## *II. LEGAL ANALYSIS*

### *A. Standard Of Review*

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any

more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785,

786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that

'[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly

erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

[1] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation

(continued…)

As noted above, defendant Dodd has filed objections to Judge Zoss's Report and Recommendation. I, therefore, undertake the necessary review of Judge Zoss's recommended disposition of defendant Dodd's motion to suppress.

### *B. Objections To Findings Of Fact*

#### *1. Witness's credibility*

Defendant Dodd objects to Judge Zoss's portrayal of Heidi Lusson as an "unbiased witness." Report and Recommendation at 6. Defendant Dodd contends that because Lusson's son, Charles Kraft, had a falling out with defendant Dodd, she is not an unbiased witness. There is no direct evidence in the limited record before me that Lusson was biased against Dodd. For example, there is no evidence in the record that Lusson was upset with Dodd for asking her son to leave the house he shared with Dodd and his wife, or for any other reason. Therefore, this objection is overruled.

#### *2. Whether counsel's argument was frivolous*

Defendant Dodd also objects to Judge Zoss's characterization that defense counsel's argument, regarding Heidi Lusson's credibility, "can only be described as frivolous." Report and Recommendation at 6. Judge Zoss's characterization of defense counsel's argument is not a factual finding.[2] I will address the merits of defendant Dodd's motion to suppress below. Defendant Dodd's objection, therefore, is also overruled.

---

[1](…continued)
omitted)).

[2]Likewise, Judge Zoss's similar characterization of defense counsel's argument as "nothing short of absurd" is not a finding of fact. Judge Zoss's assessment that "[t]he defendant does not even attempt to explain why this rule does not bar his claim" also is not a factual finding. Therefore, defendant Dodd's objections to these statements are overruled.

### *C. Objections To Legal Conclusions*

Defendant Dodd also objects to Judge Zoss's conclusion that the search warrant was supported by probable cause. "'Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing courts.'" *United States v. Hudseth*, 525 F.3d 667, 675 (8th Cir. 2008) (quoting *United States v. Grant*, 490 F.3d 627, 631-32 (8th Cir. 2007)) (quoting in turn *Illinois v. Gates*, 462 U.S. 213, 236 (1983)(internal quotation marks omitted)); *see United States v. Seidel*, ---F.3d---, 2012 WL 1499907, at *3 (8th Cir. May 1, 2012). "'If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established.'" *Hudseth*, 525 F.3d at 675 (quoting *Grant*, 490 F.3d at 631) (quoting in turn *Gates*, 462 U.S. at 238)(internal quotation marks omitted); *see Seidel*, ---F.3d---, 2012 WL 1499907, at *3; *see also United States v. Vega*, 676 F.3d 708, 717 (8th Cir. 2012). Sufficiency of the affidavit is not determined by a piecemeal approach, and the elements of the affidavit should not be read in isolation. *United States v. Sumpter,* 669 F.2d 1215, 1218 (8th Cir. 1982). "Applications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ventresca,* 380 U.S. 102, 109 (1965); *accord Seidel*, ---F.3d---, 2012 WL 1499907, at *3 ("'The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit.'") (quoting *United States v. Sumpter,* 669 F.2d 1215, 1218 (8th Cir. 1982) (internal quotation marks omitted)); *United States v. Ryan,* 293 F.3d 1059, 1061 (8th Cir. 2002) ("Search warrant '[a]pplications and affidavits should be read with common sense

and not in a grudging hyper technical fashion.'" ) (quoting *United States v. Goodman,* 165 F.3d 610, 613 (8th Cir. 1999)).

The search warrant application affidavit contained the following information: first, that April Hunt reported to the police that her Smith & Wesson .357 magnum handgun had been stolen from a camper parked near her residence at 685 310th Street, Woden, Iowa; second, that Heidi Lusson and Chris Thompson had seen this firearm at the same residence on February 6, 2011; third, that "[n]umerous individuals" placed defendant Dodd in possession of the pistol; fourth, that Dodd was a felon and prohibited from possessing firearms and ammunition; and finally, that on February 16, 2011, the day before the search warrant application was made, Thompson told Lusson that he had moved the firearm and placed it behind the seat of Dodd's pickup truck parked at the same residence. Considering the totality of the circumstances in a common sense, practical way, I find that the search warrant affidavit would lead a prudent person to believe that there was a fair probability that evidence of a crime, the Smith & Wesson .357 magnum handgun, would be found in defendant Dodd's pickup truck. *See Gates,* 462 U.S. at 238; *Hudseth*, 525 F.3d at 675; *Grant,* 490 F.3d at 631. Accordingly, I find probable cause existed to issue the search warrant and defendant Dodd's objection is overruled.[3]

---

[3]However, even if there was no probable cause to issue the search warrant, the *Leon* good-faith exception applies here. "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *Grant,* 490 F.3d at 632. "In assessing whether the officer relied in good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit, and we confine our inquiry to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the (continued...)

### *III. CONCLUSION*

For the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Zoss's Report and Recommendation and **deny** defendant Dodd's motion to suppress.

**IT IS SO ORDERED.**

**DATED** this 24th day of May, 2012.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

---

[3](…continued)
[issuing judge's] authorization." *Id.* (internal quotation marks and citations omitted). Here, based on the affidavit, a reasonably well-trained officer would not have known that the search was illegal despite the issuing magistrate's authorization.